U.S DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED - SHREVEPORT

MAR - 4 2013
TONY R. MOORE, CLERK
BY_____ DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

KEVIN W. YOUNG                          CIVIL ACTION NO: 11-1784

VERSUS                                  JUDGE DONALD E. WALTER

PAUL REVERE LIFE INSURANCE CO.          MAGISTRATE JUDGE HANNA

## MEMORANDUM RULING

Before the Court are a Motion for Partial Summary Judgment [Docs. #8 and 22] filed by the Plaintiff, Kevin W. Young, M.D. ("Dr. Young") and Motion for Summary Judgment [Doc. #15 and 23] filed by the Defendant, Paul Revere Life Insurance Co. ("Paul Revere"). For the reasons assigned herein, Plaintiff's Motion for Patrial Summary Judgment [Docs. #8 and 22] is **GRANTED**, and Defendant's Motion for Summary Judgment [Docs #15 and 23] is **DENIED**.

## STATEMENT OF THE CASE

Dr. Young is a psychiatrist who practiced in Crowley, Louisiana from 1997 to 2006 after completing medical school at Creighton University and satisfying his residency requirement at Tulane Medical Center in New Orleans, Louisiana. On or about December 10, 1993, while Dr. Young was a resident at Tulane Medical Center, Paul Revere issued Policy No: 01026475570 insuring Dr. Young against injury or illness. Dr. Young received a 15% reduction in his premium because of his membership in the Charity Hospital House Staff Association ("CHHSA").

In October 2006 Dr. Young voluntarily agreed to the suspension of his license to practice medicine due to an ongoing dependence on drugs and alcohol. Without a license to practice medicine Dr. Young could no longer treat clients in any capacity. Dr. Young made a claim for total disability benefits under his Paul Revere policy. On April 26, 2007, Dr. Young was advised that

his claim for disability benefits had been approved with a disability onset date of October 2006. Dr. Young received benefits in the amount of $7,820.00 per month from January 2007 through June 2011. In May 2011 Dr. Young began the process of reapplying for a medical license by requesting a meeting with an investigator for the Louisiana State Board of Medical Examiners. By letter dated June 1, 2011, Paul Revere discontinued Dr. Young's benefits after concluding that but for the lack of a license Dr. Young would be able to practice his profession.

On August 29, 2011, Dr. Young filed suit in the Fifteenth Judicial District Court, Parish of Acadia, State of Louisiana, challenging the termination of his benefits by asserting that Paul Revere breached its contractual obligations by failing to pay benefits after June 1, 2011. Dr. Young alleges that he is unable to practice medicine because of a "residual disability" as defined under the policy. Dr. Young seeks reimbursement for double the amount of benefits owed, attorney's fees, and all other relief available pursuant to La. R.S. 22:657.

On October 13, 2011, Paul Revere removed this matter to federal court asserting both diversity of citizenship and federal question premised on the policy being subject to the Employee Retirement Income Security Act of 1974 (ERISA). Dr. Young contends that the policy is not an ERISA qualified plan because he purchased the disability policy individually.[1]

Dr. Young and Paul Revere filed cross-motions for summary judgment. [Docs. #8 and 15]. The motions were originally set for disposition in April 2012. However, upon agreement by both parties the motion date was continued to allow the parties ample time to conduct discovery surrounding the ERISA issue. The parties were then allowed to file supplemental memoranda [Docs. #22 and 23] in support of their previously filed motions.

---

[1] Dr. Young does not challenge this court's diversity jurisdiction.

## LAW AND ANALYSIS

Whether a policy is governed by ERISA is a mixed question of fact and law. *House v. American United Life Ins. Co.*, 499 F.3d 443, 449 (5th Cir. 2007). The appropriate question to consider on summary judgment is whether the evidence would allow a reasonable trier-of-fact to find that an ERISA plan exists or not. *McDonald v. Provident Indem. Life Ins. Co.*, 60 F.3d 234, 235 (5th Cir. 1995). As such, this court may decide disputed questions of fact regarding the applicability of ERISA.

**A.     Whether CHHSA is an "employee organization" as contemplated by ERISA**

ERISA applies to any "employee benefit plan" if it is established or maintained by any employer or employee organization engaged in commerce, or in any industry affecting commerce. 29 U.S.C. § 1003(a). An "employee benefit plan" or welfare plan" means "any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment []" 29 U.S.C. § 1002(1).

The first item this Court must determine is whether CHHSA qualifies as an "employee organization". If CHHSA is not an "employee organization" ERISA will not apply. ERISA defines "employee organization" as:

> [A]ny organization of any kind, or any agency or employee representation committee, association, group, or plan, in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning an employee benefit plan, or other matters incidental to employment relationships; or any employees' beneficiary association organized for the purpose in whole or in part, of establishing such a plan.

29 U.S.C. § 1002(4).

3

The evidence in the record is sufficient to establish that CHHSA is an "employee organization" as defined by ERISA. CHHSA was established as an organization consisting of all residents, physicians, and interns at Charity Hospital of Louisiana in New Orleans and their affiliates. [Doc. #14-1, Ex. 1] The primary function of CHHSA is to assist its physician members with training and education. However, the organization also acted as an advocate on behalf of its physician members with the Charity Hospital administration. Dr. Frank Groves, former secretary of the CHHSA, explained in his deposition that although the organization would never have made demands of the administration it did meet with the medical director of the hospital occasionally for informal discussions regarding issues of concern. [Deposition of Dr. Groves at 14]. Dr. Groves explained that CHHSA's real power was in having a large membership roster, which could be used as a tool to encourage the administration to provide generous pay and benefits without making formal demands. [Deposition of Dr. Groves at 24].

Dr. Groves testified that one of the physician members' primary issues of concern during his tenure was their low pay, which was increased substantially to beyond the cost of living. [Deposition of Dr. Groves at 54]. However, Dr. Groves could not state whether the pay raise was a result of pressure by the CHHSA or merely the generosity of the state government. [Deposition of Dr. Groves at 54]. The evidence in the record demonstrates that CHHSA successfully lobbied the Charity Hospital administration for health benefits and parking spots. [Doc. #14-1, Ex. 2].

The CHHSA's advocacy on behalf of its members regarding matters incident to their employment relationship with Charity Hospital is sufficient to make CHHSA an "employee organization" as defined by ERISA.

4

B.  **Whether the arrangement between CHHSA and Paul Revere qualifies as an ERISA plan.**

The Fifth Circuit has articulated a three factor test to determine whether a certain benefit arrangement meets the definition of an "employee welfare benefit plan" to be governed by ERISA. For a benefit arrangement to be governed by ERISA the arrangement must be: (1) a plan, (2) not excluded from ERISA coverage by the safe-harbor provisions established by the Department of Labor, and (3) established or maintained by the employer or employee organization with the intent to benefit employees. *Shearer v. Southwest Service Life Ins. Co.*, 516 F.3d 276, 279 (5th Cir. 2008); 29 U.S.C. § 1002(1). If any of the factors is answered in the negative the arrangement is not an ERISA plan. *Meredith v. Time Ins. Co.*, 980 F.2d 352, 355 (5th Cir. 1993).[2]

For ERISA to apply the Court must find in the affirmative that CHHSA "established or maintained" a plan with the intent to benefit its members. To answer this question the court must analyze two elements: (1) whether the employer maintained the plan, and (2) whether the employer intended to provide benefits to its members. *Shearer*, 516 F.3d at 279. To determine whether an employee organization 'established or maintained' a benefit plan the court should focus on the employee organization and its involvement with the administration of the plan. *Id.* (citing *Hansen v. Cont'l Ins. Co.*, 940 F.2d 971, 978 (5th Cir. 1991). There must be some "meaningful degree of participation" by the employee organization in the creation or administration of the plan, and an intent to provide employees with a welfare benefit program. *Hansen*, 940 F.2d at 978.

---

[2] Because the court finds that CHHSA did not "establish" or "maintain" a welfare benefit plan the court will not address whether all elements of a "plan" are met or whether the Department of Labor safe harbor provisions apply to this case.

5

The Fifth Circuit has stated that "the purchase of insurance is evidence of the establishment of a plan, fund, or program" and that "the purchase of a policy or multiple policies covering a class of employees offers substantial evidence that a plan, fund or program has been established." *Shearer*, 516 F.3d at 279 (citing *Memorial Hosp. Sys. v. Northbrook Life Ins. Co.*, 904 F.2d 236, 242 (5th Cir. 1990)). However, the Fifth Circuit has also held "that if an employer [or employee organization] does no more than purchase insurance for its employees and has no further involvement with the collection of premiums, administration of the policy, or submission of claims, the employer has not established an ERISA plan." *Id.* (citing *Hansen*, 940 F.2d at 978).

The parties present contradictory evidence regarding the interactions between CHHSA and Paul Revere. Dr. Groves testified that Paul Revere agent Gordon Naquin initially approached him as secretary of the CHHSA to discuss disability insurance. [Deposition of Dr. Groves at 56]. Dr. Groves testified that he was concerned about his colleagues having sufficient disability coverage. [Deposition of Dr. Groves at 57]. Dr. Groves testified that because of his concern he encouraged other CHHSA members to attend a presentation and social function sponsored by Mr. Naquin at a venue near the hospital. [Deposition of Dr. Groves at 58, 60-61]. Dr. Groves explained that he was also offered disability insurance from Northwest Mutual, but he was unimpressed with their terms. [Deposition of Dr. Groves at 59-60]. Dr. Groves could not recall whether CHHSA members were provided at 15% discount, but agreed that it was conceivable. [Deposition of Dr. Groves at 68]. Dr. Groves testified that CHHSA members were required to pay for their policies individually and directly to Paul Revere without any contribution by CHHSA, and that all claims were handled directly with Paul Revere. [Deposition of Dr. Groves at 34-36].

6

Mr. Naquin's account differs. Mr. Naquin testified that Dr. Groves initially met with him to discuss a disability policy for himself. [Deposition of Naquin at 10]. During this meeting Mr. Naquin advised Dr. Groves about Paul Revere's ability to offer a 15% "Association discount" if Paul Revere could verify that CHHSA was a "bona fide" group with a proper board and bylaws. [Deposition of Naquin at 11]. The 15% discount was established by Paul Revere underwriters using a designated "risk group". [Doc. #14-1, Ex. 3]. Although membership in CHHSA was required for a physician to receive the 15% discount, participation was completely voluntary and CHHSA members were free to obtain disability policies from Paul Revere's competitors. [Deposition of Naquin at 14]. For CHHSA members to have access to the 15% discount Paul Revere required that a minimum of ten CHHSA members purchase disability policies. [Deposition of Naquin at 29-30]. Mr. Naquin testified that if he met with a non-CHHSA physician about purchasing disability insurance he would inform the physician that he/she could receive a 15% discount if they joined the CHHSA. Haywood Hillyer, a fellow Paul Revere agent, testified that he routinely told physicians about the potential 15% discount for joining CHHSA because it helped increase his sales, although the discount cut into his commission. [Deposition of Haywood Hillyer at 17-18]. Paul Revere verified that all physicians applying for the CHHSA discount were members of the organization before issuing a policy utilizing the designated risk group. [Deposition of Naquin at 24-25]. The record also reflects that CHHSA provided Paul Revere with its membership roster. [Doc. #23, Ex. C].

Mr. Naquin also testified that the CHHSA received no financial benefit from the discounted policy, and that the 15% discount was credited directly to the individual physician applying for disability coverage. [Deposition of Naquin at 14]. Mr. Naquin confirmed that CHHSA did not make

7

any financial contributions to Paul Revere in exchange for the 15% discount. [Deposition of Naquin at 14-15]. Mr. Naquin testified that CHHSA did not handle any aspect of the claims process, which were submitted directly to Paul Revere. [Deposition of Naquin at 15]. Mr. Naquin also testified that the CHHSA did not have a plan administrator. [Deposition at Naquin at 14]. This information was corroborated by Dr. Groves who testified that CHHSA had no employees, much less a plan administrator. [Deposition of Dr. Groves at 34-35].

The only affirmative act taken by CHHSA was their endorsement of the Paul Revere disability policy and advertisement to its members. A letter dated June 15, 1992 from Dr. Groves to Mr. Naquin states "the board of directors of the Charity Hospital Housestaff Association has decided to endorse your firm to provide association sponsored disability insurance to our members." [Doc. #23-1, Ex. F]. The court notes that although the letter uses the phrase "association sponsored disability insurance" the uncontroverted evidence establishes that the CHHSA made no financial contribution towards the purchase of the individual policies. The record also contains a newsletter composed by Dr. Groves dated June 30, 1993, issued to CHHSA physicians which states in relevant part:

> I am happy to announce that the Charity Hospital Housestaff Association endorses disability income insurance from The Paul Revere Life Insurance Company for the members of our Association. What does this mean for you? Simply, that you can now buy quality Paul Revere income protection at a generous 15% discount. [] To find out more about this outstanding offer, please contact Gordon Naquin, our Paul Revere representative, at 524-2220 or send in the enclosed postage paid reply card. Sincerely, Frank D. Groves, M.D. [] P.S.: Gordon Naquin will gladly review your current disability income insurance plan, at no charge and without obligation. Call 524-2220 for an appointment.

[Doc. #23-1 at 78].

It is the finding of this court that Paul Revere has failed to demonstrate that CHHSA established or maintained a welfare benefit plan on behalf of its members. The only thing the evidence demonstrates is that CHHSA negotiated a 15 % discount with Paul Revere and publicized the discount to its members. This is insufficient to "establish" a plan under ERISA. As noted *supra*, if an employer purchases an insurance policy but has no further involvement with the collection of premiums, administration of the policy, or submission of claims, the employer has not established an ERISA plan. *Shearer*, 516 F.3d at 279. CHHSA's negotiations with Paul Revere to obtain a 15% discount for its members falls well below this minimum threshold.

## CONCLUSION

For the reasons assigned herein, Plaintiff's Motion for Partial Summary Judgment [Docs. #8 and 22] is hereby **GRANTED**. Defendant's Motion for Summary Judgment [Docs. #15 and 23] is **DENIED**.

**THUS DONE AND SIGNED**, this 28 day of February, 2013.

DONALD E. WALTER
UNITED STATES DISTRICT JUDGE

9